IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Rita S. Whites,

Plaintiff,

vs.

Carolyn W. Colvin,
Commissioner of Social Security,

Defendant.

Civil Action No. 8:13-cv-396-DCN-JDA

**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] This is Plaintiff's third appeal to this Court after two remands. For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and the case be remanded to the Commissioner for an award of benefits to Plaintiff.

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

In June 2006, Plaintiff filed applications for DIB and SSI, alleging disability as of August 26, 2005.[3] [*see* R. 498; *see also* R. 428–45 (Full DIB Review Sheet); R. 446–52 (Special Title II Workload Sheet).] The claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. 13, 27–28, 72–77.] On January 5, 2007, Plaintiff filed a request for hearing before an administrative law judge ("ALJ") [R. 62], and on January 11, 2008, ALJ Richard Vogel held a hearing on Plaintiff's claims [R. 351–72].

On March 11, 2008, the ALJ issued his decision, finding Plaintiff not disabled. [R. 13–26.] Plaintiff filed a request for review of the ALJ's decision with the Appeals Council [R. 9], which denied review on March 20, 2009 [R. 3–6]. Plaintiff commenced an action for judicial review in this Court, Civil Action No. 2:09-01307-RSC, and on December 30, 2009, upon the Commissioner's motion to remand the case, the Court remanded the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). [Civil Action No. 2:09-01307-RSC, Docket Entries 19, 20.] On June 10, 2010, pursuant to the Order of the Court, the Appeals Council remanded Plaintiff's case to ALJ Vogel[4] [R.

[3] Plaintiff's 2006 applications for DIB and SSI were not found in the record before the Court.

[4] On remand, the Appeals Council directed the ALJ to further evaluate Plaintiff's mental impairment in accordance with the special technique described in 20 C.F.R. §§ 404.1520a, 416.920a; further evaluate Plaintiff's subjective complaints and provide rationale consistent with the Social Security regulations governing evaluation of symptoms; give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale, including specific references to evidence of record supporting the assessed limitations; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. [R. 390–91.]

390–91], who conducted a second hearing on Plaintiff's claims on October 8, 2010 [R. 477–94].

On October 29, 2010, the ALJ issued a partially favorable decision, finding that Plaintiff became disabled on October 18, 2009. [R. 377–87.] Plaintiff commenced a second action for judicial review in this Court, Civil Action No. 8:10-cv-03302-DCN, seeking an award of benefits from August 26, 2005 rather than October 18, 2009. [Civil Action No. 8:10-cv-03302-DCN, Docket Entry 1.] On February 27, 2012, this Court again remanded the matter to the Commissioner, finding that the ALJ improperly relied on Plaintiff's work history to determine there was no evidence of adaptive deficits. [R. 514–42.] Pursuant to the Order of the Court, the Appeals Council remanded Plaintiff's case to ALJ Nicole S. Forbes-Schmitt ("ALJ Forbes-Schmitt" or "ALJ") [R. 545], who conducted a third hearing on Plaintiff's claims on October 2, 2012 [R. 561–571].

On November 6, 2012, ALJ Forbes-Schmitt issued an opinion finding Plaintiff not disabled. [R. 498– 507.] At Step 1,[5] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2010 and had not engaged in substantial gainful activity from August 26, 2005 through October 18, 2009. [R. 501, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: borderline intellectual functioning and degenerative disk disease of the cervical and lumbar spine ("DDD") . [R. 501, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the

[5]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 502, Finding 4.] The ALJ specifically considered Listings 1.02, 1.04, 12.05. [R. 502–04.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that during the period in question, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: to lift and carry no more than 20 pounds occasionally, with no repetitive bending, carrying, squatting, stooping, pulling, twisting, or kneeling; and to perform simple, routine, repetitive tasks.

[R. 504, Finding 5.] Based on this RFC, at Step 4, the ALJ determined at Step 4 that Plaintiff was able to perform her past relevant work as a cashier. [R. 507, Finding 6.] Consequently, the ALJ found Plaintiff had not been under a disability as defined in the Act from August 26, 2005, through the date of the decision. [R. 507, Finding 7.] On February 14, 2013, Plaintiff filed the instant civil action seeking judicial review of that determination. [Doc. 1.]

**<u>THE PARTIES' POSITIONS</u>**

Plaintiff argues the ALJ's decision is not supported by substantial evidence and should be remanded because

1. the ALJ's Listing analysis does not rest on substantial evidence [Doc. 16 at 10–15]; and

2. the ALJ's RFC was incomplete [*id.* at 15–17].

Plaintiff asks this Court to reverse the Commissioner's decision and order that Plaintiff be awarded benefits without a further hearing. [*Id*. at 17.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that

1. the ALJ properly determined that Plaintiff's mental impairment did not meet Listing 12.05C [Doc. 18 at 7–9];
2. the ALJ properly considered the combined effect of Plaintiff's impairments [*id.* at 9–14]; and
3. the ALJ's RFC determination is supported by substantial evidence [*id.* at 14–15.]

The Commissioner also contends that an award of benefits is not proper. [*Id*. at 15–18.]

**STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "'allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

[Commissioner's] designate, the ALJ),'" not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[6] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact.

[6]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

*Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

### I. The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the

claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

**A. *Substantial Gainful Activity***

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. 20 C.F.R. §§ 404.1574–.1575, 416.974–.975.

**B. *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. See 20 C.F.R. §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider

the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C. *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[7] 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D. *Past Relevant Work***

[7] The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[8] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

**E. *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[9] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

---

[8] Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(e)

[9] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

**III. Treating Physicians**

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

**IV. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment

to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

**V. Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig,* 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id*. (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even

when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31, 898-02 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996), which is consistent with SSR 90-1p. SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *See also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

**VI. Credibility**

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Listing Analysis–Listing 12.05**

Plaintiff contends that the ALJ's summary evaluation "fails to satisfy the substantial evidence standard as she relies on 'isolated references' in the record rather than the evidence as a whole." [Doc. 16 at 12.] Specifically, Plaintiff contends the ALJ relied on her score on the Stanford-Binet test at age 15 to discredit her score on the Weschler tests without explaining her reliance on the Stanford-Binet scores which are not correlative. [*Id.*] Further, Plaintiff contends the ALJ failed to account for Dr. Sausser's findings and opinions and failed to acknowledge the fully credible testimony of Plaintiff's daughter. [*Id*. at 13.] Plaintiff also argues that the ALJ's findings are inconsistent in that the ALJ found Plaintiff's mental limitations caused her mild limitations in her activities of daily living and social functioning, and moderate difficulties in concentration, persistence and pace [R. 504], but does not reconcile her conclusion that Plaintiff's lifelong condition has not caused deficits in adaptive functioning. [*Id.*] The Commissioner contends the ALJ's conclusion that Plaintiff did not have deficits in adaptive functioning manifesting prior to age 22 was reasonable, and that the ALJ thoroughly considered the issue as to whether the record demonstrated mental deficits in adaptive functioning prior to age 22, and had sound reasons as to why it did not. [Doc. 18 at 7–8.]

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms. *See Cook*, 783 F.2d at 1173 (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support

the determination"); *Beckman v. Apfel*, No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) ("In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." (*quoting Cook*, 783 F.2d at 1172)). In this case, the ALJ identified Listing 12.05 as a relevant listing [R. 502], which the parties do not dispute. Listing 12.05C reads as follows:

> *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet Listing 12.05, a claimant must satisfy the "diagnostic description" in the introductory paragraph and any one of the four sets of criteria—A, B, C, or D. Id. § 12.00A. The diagnostic description describes mental retardation as "significantly sub-average general intellectual functioning with deficits in adaptive functioning." Id. § 12.05. The Administration "has never adopted a standard of measurement for the term 'deficits in adaptive functioning' in the capsule definition of Listing 12.05." *Wall v. Astrue*, 561 F.3d

1048, 1073 (10th Cir. 2009) (Holloway, C.J., dissenting). The Administration has noted, however, that the definition of mental retardation in the listings is "consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations."[10] Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018-01, at 20,022 (Apr. 24, 2002). But see *Cox v. Astrue*, 495 F.3d 614, 618 n.4 (8th Cir. 2007) (noting that "the medical standard for mental retardation is not identical to the legal standard"). Medical professional organizations have stated that deficits in "adaptive functioning" can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. *Atkins v Virginia*, 536 U.S. 304, 309 n.3 (2002) (*quoting* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed., Text Revision 2000) [hereinafter DSM-IV-TR]) (noting the similarity between the American Association on Mental Retardation and the American Psychiatric Association's definitions of mental retardation).

---

[10]The Administration explained that, in the United States, each of the four major professional organizations has its own definition. Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018-01, at 20,022 (Apr. 24, 2002). However, although each requires "significant deficits in intellectual functioning," which is evidenced by low IQ scores, "age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations." Id. The Administration has discussed the definitions utilized by the American Psychiatric Association but has specifically stated that it endorses no organization's methodology over another. Id. In fact, when the Administration revised the listings in 2002, it declined a proposal to incorporate the American Psychiatric Association definition of mental retardation into Listing 12.05. Id. The Administration's definition "establishes the necessary elements, while allowing use of any of the measurement methods recognized and endorsed by the professional organizations." Id. In this case, the Court refers to the definition in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders.

Further, to satisfy the "diagnostic description" in the introductory paragraph, the claimant's deficits in adaptive functioning must have "initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

***Adaptive Deficits***

The DSM-IV-TR defines mental retardation as a combination of "significantly subaverage intellectual functioning (an IQ of approximately 70 or below)" and "significant limitations in adaptive functioning" in at least two skill areas; thus, a diagnosis of mental retardation includes a finding of at least two deficits in adaptive functioning. DSM-IV-TR, supra, at 41. As stated above, the skill areas include communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. *Id.* Further, functional illiteracy in and of itself is a deficit in adaptive functioning. *Davis v. Astrue*, No. 2:07-1621, 2008 WL 1826493, at *4 (D.S.C. Apr. 23, 2008) (citing DSM-IV-TR, supra, at 40).

***Manifestation During the Developmental Period***

The Fourth Circuit has recognized that the regulations "expressly define mental retardation as denoting 'a lifelong condition.'" *Branham*, 775 F.2d at 1274 (*quoting* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(B)(4)). A claimant does not have to present evidence of an IQ test before age 22 to be found mentally retarded under Listing 12.05. *See id.* (stating that "there may be many reasons why an individual would not have had the opportunity or need to have a formal intelligence quotient test until later in life"). Evidence of illiteracy despite a claimant's education supports a finding that the claimant's mental retardation occurred before age 22. *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir. 1988).

Additionally, a diagnosis of mental retardation supports a finding that the claimant's mental retardation occurred before age 22. See DSM-IV-TR, supra, at 47 (stating that a diagnosis of mental retardation requires an onset before age 18). Moreover, "in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ remained relatively constant." *Luckey v. Dep't of Health & Human Servs*., 890 F.2d 666, 668 (4th Cir. 1989) (*citing Branham*, 775 F.2d at 1274) (emphasis added).

***The ALJ's Listing Analysis***

The ALJ found Plaintiff did not meet the Listing because she failed to display deficits of adaptive functioning during her developmental period prior to age 22. [R. 503.] The ALJ explained her decision as follows:

> The claimant's school records show that although she was in special education classes, she functioned at the high-end range for borderline intellectual functioning with a valid IQ score of 79 on the Stanford Binet test on October 5, 1967 when she was age 15. (Exhibit F20141). In addition, while the claimant's work history alone does not disestablish mental retardation; it is evidence of the fact that she worked successfully at the semiskilled level in various capacities from 1990-2005. (Exhibit 3D). Further, the claimant demonstrated no difficulties in preparing SSA forms independently and legibly, and her attorney apparently had no problem in allowing her to sign contracts for legal services independently. (Exhibits B and E). Finally, none of the claimant's treating doctors suggested that the claimant suffered from decreased mental functioning or needed assistance, such as a guardian, in helping her manage her affairs or medications. As a result, the record fails to demonstrate that the claimant displayed significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period with an onset of the impairment before age 22.
>
> . . .

> The claimant's condition also failed to meet the requirements in paragraph C because although the claimant had a verbal, performance, or full scale IQ of 60 through 70, with a physical impairment imposing an additional and significant work-related limitation of function, her condition did not manifest itself prior to age 22, as discussed above. In addition, the undersigned questions the validity of the claimant's Full Scale IQ score of 69 given her past ability to work for years in the semi-skilled workforce with no evidence of decreased mental functioning, her ability to perform household and self-care activities, and her overstated pain behavior during the exam (the examiner noted that upon first examination, she was standing and walking until seen at which time she walked slowing and cautiously). (Exhibit F20028). As a result, the undersigned finds that the C criteria were not met in this case.

[R. 503.]

***Evidence of Record***

Plaintiff's school records from Rolla Public Schools, Rolla, Missouri, indicate an IQ score of 79 based on the Stanford Binet test dated October 5, 1967 at age 13. [R. 330.] Notes from her seventh grade school year indicate Plaintiff was a special education student with grades of mostly Cs with one B- and two D+s. [R. 331.] Plaintiff testified that she relies on her daughter to fill out forms and to complete paperwork when visiting the doctor's office. [R. 360; *see* R. 567 (most recent hearing transcript, reminding the ALJ about previous testimony).] Plaintiff's daughter testified that Plaintiff had trouble spelling different words, understanding what she reads, and remembering what she is told by her doctors. [R. 364–365; *see* R. 567 (most recent hearing transcript, reminding the ALJ about previous testimony).] Plaintiff's daughter also testified that her mom has been able to work because her jobs have been pretty simple; jobs that anyone can do. [R. 366; *see* R. 567 (most recent hearing transcript, reminding the ALJ about previous testimony).]

Dr. Gene J. Sausser ("Dr. Sausser") saw Plaintiff on August 23, 2006 on referral from Donna J. Blanchard for a psychological evaluation for assistance in determining eligibility for Social Security Disability benefits. [R. 216.] Plaintiff reported "going to school to the beginning of the 11th grade. She said that they were in Missouri at that time and moved to another school where a lot of racial [riots] were occurring. Her parents did not want her to go to school there and as result, she never went back to finish her education." [R. 216.] Plaintiff also reported injuring her back on September 26, 2005 while attempting to move a box which ended up falling on her. [R. 217.] Dr. Sausser's notes indicate that Plaintiff's "[a]ctivities of daily living are affected by her back injury." [R. 217.]

Dr. Sausser administered the Wechsler Adult Intelligence Scale – III and the Wide Range Achievement Test – III and conducted a Clinical Interview. [R. 218.] Dr. Sausser noted that, during testing, Plaintiff worked at an average pace and that the results obtained were seen as good and accurate estimates of her then-current functioning. [*Id*.] Plaintiff's full scale IQ score on the Wechsler Adult Intelligence Scale – III was 69 and placed her in the mid range of mental retardation, or mild mental retardation, according to DSM-IV norms. [*Id*., R. 220.] On the Wide Range Achievement Test – III, Plaintiff scored on a third grade level in Arithmetic, a fourth grade level in Spelling, and a sixth grade level in Reading. [*Id*.] The clinical interview yielded a diagnosis of depression. [*Id*.] Dr. Sausser concluded that any funds award to Plaintiff would best be managed by another responsible adult. [R. 221.]

On August 29, 2006, Dr. Mark A. Williams ("Dr. Williams"), a DDS consultant, completed a Psychiatric Review Technique form ("PRTF"), assessing Plaintiff's mental limitations from August 26, 2005 to August 29, 2006, based on Listing 12.02 (Organic

Mental Disorders), Listing 12.04 (Affective Disorders), and Listing 12.05 (Mental Retardation), as well as a Mental RFC. [R. 198–215.] The PRTF indicates a finding of mild restrictions in activities of daily living; moderate restrictions in social functioning and in maintaining concentration, persistence or pace; and no episodes of decompensation. [R. 208.] Dr. Williams also noted,

> School records suggest hx of borderline to low average IQs. Hx of adaptive functioning not supportive of mental retardation.
>
> At psych CE, clmts test performance appears to be an underestimate of true performance abilities. Dx of MR is not credible. There is no hx of serious mental illness. Depression is suggested by CE.
>
> Decision: Data is not supportive of listing level impairments. From psych perspective she is capable of returning to previous work.

[R. 210.]

With respect to Plaintiff's mental RFC, Dr. Williams found that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures or in her ability to understand and remember very short simple instructions; but was moderately limited in her ability to understand and remember detailed instructions. [R. 212.] Further, Dr. Williams found Plaintiff was not significantly limited in her ability to carry out very short and simple instructions; to maintain attention and concentration for extended periods of time; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; and to complete a normal work-day and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [R. 212, 214.]

With respect to social interactions, Dr. Williams found Plaintiff was not significantly limited in her ability to ask simple questions or request assistance; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. [R. 214.] Dr. Williams found Plaintiff was moderately limited in her ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. [*Id*.] Dr. Willams also found no significant limitations in Plaintiff's ability to respond to appropriate changes in work setting; to be aware of normal hazards and to take appropriate precautions; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. [*Id*.]

***Discussion***

In its prior decision in this case, remanding this matter back to the Commissioner, the Court noted that it could not "find substantial evidence supports the ALJ's conclusion that there was *no* objective evidence of adaptive deficits manifested during Plaintiff's developmental period because the ALJ failed to discuss record evidence that contradicts his conclusion." [R. 538 (emphasis in original).] The Court's decision specifically noted the lack of discussion with respect to the contradictory evidence provided by Dr. Sausser (who diagnosed Plaintiff with mild mental retardation under diagnosis code 317 effectively finding at least two deficits in adaptive functioning) and Dr. Williams (who found that Plaintiff's school records indicated a borderline to low average IQ, but no deficits of adaptive

functioning to support mental retardation) with respect to Plaintiff's mental limitations. [R. 538–541.]

The record supports a finding that Plaintiff suffers from deficits in "functional academic skills," one of the skill areas under the DSM–IV–TR definition of mental retardation. DSM–IV–TR at 41. The record shows that, as an adult, Plaintiff exhibited poor academic performance and exhibited reading skills at the sixth grade level, spelling skills at the fourth grade level, and math skills at the third grade level. [R. 220]; *see Salmons v. Asture*, Civil No. 5:10CV195-RLV, 2012 WL 1884485, at *7 (W.D.N.C. May 23, 2012 ("[F]unctional academic skills is the primary measure of deficits of adaptive functioning before age 22."). Additionally, the mental RFC assessment conducted by Dr. Williams found Plaintiff was moderately limited in her ability to understand and remember detailed instructions; in her ability to understand and remember detailed instructions and to carry out detailed instructions; in her ability to interact appropriately with the general public; and in her ability to accept instructions and respond appropriately to criticism from supervisors [R. 212, 214], indicating limitations in adaptive functioning in her social/interpersonal, communication, and work skills.

As previously stated, a diagnosis of mental retardation under DSM IV is defined as "significantly subaverage general intellectual functioning . . . that is accompanied by significant limitations in adaptive functioning in at least two . . . skill areas . . . ." DSM IV at 39. Medically, a diagnosis of mental retardation requires a finding that the patient's intellectual limitations began in childhood. DSM–IV–TR at 54. Thus, the very diagnosis of mental retardation by Dr. Sausser includes a finding of at least two deficits in adaptive functioning and mental limitations beginning in childhood. Further, Dr. Sausser's

recommendation that, if awarded benefits, the funds would be best managed by another responsible adult [R. 221] could support a finding of deficits in "self-care" and/or "home living," two additional skill areas under the DSM–IV–TR definition of mental retardation. The ALJ gave Dr. Sausser's mental retardation diagnosis "little weight" based on evidence of "higher intellectual functioning" [R. 506], that is, Plaintiff's work history, her score of 79 on the Stanford Binet test, and the lack of any treating doctor suggesting she suffered from decreased mental functioning [*see* R. 503]. However, even without the mental retardation diagnosis, the record supports finding the presence of deficits in adaptive functioning prior to age 22 as outlined above.

In this case, even without a diagnosis of mental retardation,[11] the record establishes the presence of deficits in adaptive functioning prior to age 22. Although the ALJ "questions the validity of [Plaintiff's] full scale IQ score" based on "past ability to work for years in the semi-skilled workforce with no evidence of decreased mental functioning, her ability to perform household and self-care activities, and her overstated pain behavior during the exam" the ALJ does not reject the IQ score as invalid, and actually finds that Plaintiff had a "verbal, performance, or full scale IQ of 60 through 70." [R. 503.] Additionally, the DSM–IV and Listing 12.05C assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly

[11] The Eighth Circuit has affirmatively held that a plaintiff does not have to be formally diagnosed with mental retardation to meet the Listing's definition of mental retardation. *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (rejecting the Commissioner's argument that a diagnosis of mental retardation was a requirement for establishing a plaintiff meets the requirements of Listing 12.05). When the Administration revised its Listing of Impairments in 2002, it declined a proposal to incorporate the DSM's definition of mental retardation into Listing 12.05. *See id.*

mentally retarded individuals may be unable to work where they have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05C. This listing implies that such an individual will be able to work unless he has, or until he develops, a severe physical or additional mental impairment. Therefore, the fact that a plaintiff has a history of continuous employment in the past is irrelevant to whether she has subsequently become disabled due to the development of additional severe impairments. *Muntzert v. Astrue*, 502 F.Supp.2d 1148, 1158 (D. Kan. 2007); *see also Davis*, 2008 WL 1826493, at *4 ("While [the claimant] had been able to function in a work setting, listing 12.05C anticipates that a [claimant] of limited intellectual ability will be more severely limited, and disabled when faced with other severe impairments.") In this case, the record establishes severe impairments of borderline intellectual functioning *and* degenerative disk disease of the cervical and lumbar spine. [R. 501.] Therefore, the ALJ's use of work history to deny benefits was improper.

Because the ALJ found that Plaintiff "had a verbal, performance, or full scale IQ of 60 through 70, with a physical impairment imposing an additional and significant work-related limitation of function" [R. 503], and evidence in the record supports the presence of deficits in adaptive functioning prior to age 22, the Court finds that Plaintiff meets Listing 12.05C, and the ALJ's finding of no deficits of adaptive functioning prior to age 22 is not supported by substantial evidence.[12]

**Remand for Additional Proceedings or for an Award of Benefits**

---

[12]Because the Court finds that Plaintiff meets Listing 12.05C, the Court declines to address Plaintiff's remaining allegations of error.

Whether to remand for additional proceedings or for an award of benefits is generally approached on a practical level, and the decision rests within the sound discretion of the district court. *Smith v. Astrue*, No. 3:10–66, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) (citing *Edwards v. Bowen*, 672 F.Supp. 230, 237 (E.D.N.C. 1987)). An award of benefits is more appropriate when further proceedings would serve no useful purpose. *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1985). Likewise, an award of benefits is appropriate when substantial evidence indicates the claimant is disabled, and the weight of the evidence indicates a remand would only delay the receipt of benefits while serving no useful purpose or a substantial amount of time has already passed. *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982). Further, an award of benefits is appropriate when the Commissioner has had an opportunity to develop the record on an outcome-determinative issue and has failed to produce substantial evidence, *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983); *Tennant*, 682 F.2d at 710–11; *Edwards*, 672 F.Supp. at 237, or where "there is not the slightest uncertainty as to the outcome" and additional proceedings "would be an idle and useless formality," *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969); *see also Barry v. Bowen*, 862 F.2d 869,(4th Cir. 1988) (unpublished opinion) (citing *NLRB*, 394 U.S. at 766 n. 6). On the other hand, additional proceedings are appropriate where they could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

A review of the record and relevant case law reveals that this matter should be reversed and remanded for an award of benefits. Plaintiff applied for benefits in June 2006, alleging an onset of disability date of August 29, 2005 [*see* R. 498; *see also* R. 428–45, R. 446–52], indicating a substantial amount of time has passed since Plaintiff applied for

benefits, and this case has been remanded for additional proceedings twice before. Further, the Court finds the ALJ's decision that there is no evidence of adaptive deficits or manifestation before age 22 is not supported by substantial evidence. Rather, the Court finds that substantial evidence in the record as a whole indicates Plaintiff is disabled in accordance with Listing 12.05C, and the weight of the evidence indicates remand would only delay the receipt of benefits, while serving no useful purpose because there is no additional information to be developed in the record to remedy any defects. Accordingly, in this case, an outright award of benefits is appropriate.

## CONCLUSION

Wherefore, based on the foregoing, it is recommended that, pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3), the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner for an award of benefits to Plaintiff based on a disability commencing August 26, 2005.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 25, 2014
Greenville, South Carolina